# In re COSTELLO'S ESTATE.—269 S. W. (2d) 602.

Western Section.  January 29, 1954.

Petition for Certiorari denied by Supreme Court, April 16, 1954.

650

W. H. Fisher, of Memphis, for appellant.

Leslie Nicholson, of Memphis, for appellee.

CARNEY, J.   Appeal by Charles Walter Costello, Jr., from a judgment of the Probate Court of Shelby County, Tennessee, dismissing his claim against the estate of his decetased father in the amount of $18,661. C. W. Costello, Sr., died on January 27, 1953; and his widow, Mrs. Louise Goetz Costello, stepmother of the claimant, duly qualified as executrix of the estate of C. W. Costello, Sr.   So far as the record shows the deceased left only a 1949 Jeep, his clothing and jewelry consisting of some diamonds supposed to be worth approximately $4,000.

Some time about 1930 Costello, Sr., who was then in affluent circumstances, set aside approximately $18,000 for investment for the benefit of his son, the claimant, with a view to giving the $18,000 plus increase, if any,

to the son when he became 21, and pursuant thereto purchased a number of first mortgage bonds or securities in the name of Costello, Jr. When interest became payable on these securities the paying agent insisted that Costello, Sr., qualify as guardian of Costello, Jr., in order to receive such interest. Accordingly, on August 13, 1930, Costello, Sr., qualified as guardian of Costello, Jr., in the Probate Court of Shelby County, Tennessee, and collected interest on said securities and handled said securities in any manner he saw fit, without any accounting or settlement to anyone.

In June 1938 Costello, Jr., who was then married and had finished two years in college, filed petition in the Probate Court of Shelby County, Tennessee, asking that the disabilities of his minority be removed. On June 9, 1938, an order was entered in the Probate Court removing the disability of minority of Charles W. Costello, Jr. The legality of this order is not questioned.

On the same day, namely, the 9th of June 1938, the said Costello, Jr., appeared in Probate Court and agreed to a release of the said Costello, Sr., and the sureties on his guardian's bond, without regular accounting and, accordingly, the guardianship was terminated and the guardian and his bondsmen released. Costello, Jr., was at that time 18 years of age.

Likewise, on June 9, 1938, Costello, Sr., and Costello, Jr., entered into a written contract which is the basis of the present claim of Costello, Jr., against the estate of Costello, Sr. This written contract recites in its preamble the setting aside of the $18,000 as above set out, the guardianship, the removal of disability of Costello, Jr., and the release of Costello, Sr., as guardian and his bondsmen.

The remainder of said contract is as follows:

"* * * Now Therefore, it is agreed as follows:

"1. That the sum of $8836.20 in the Manhattan Branch Union Planters National Bank & Trust Company and mortgage bonds in the par amount of $9825.00 in the safety deposit box at Marx & Bensdorf Inc., represent said fund, and that the same is all that is due said fund and that all the acts and transactions of said Charles Walter Costello Sr., as guardian have been and are unreservedly and fully severally approved.

"2. That said cash and all cash arising from said bonds or future investments in bonds, notes, stocks, or properties shall be deposited and kept deposited in the Manhattan Branch Union Planters National Bank & Tr Co or such other Bank or Banks as the parties may hereafter agree upon in the name of Charles Walter Costello Jr., subject to his check only when countersigned by Charles Walter Costello Sr., and all bonds, notes, or stocks shall be kept in a safety deposit box in some bank or Trust Company that the parties hereto agree upon in the name of the two parties.

"3. That maturities and/or collections are to be collected by Charles Walter Costello Sr. or by Charles Walter Costello Jr. with the consent of the former, and deposited in the aforesaid bank account.

"4. That investments as aforesaid are to be made by said Charles Walter Costello Sr. from time to time as he sees fit and said Charles Walter Costello Sr. in no event is to be liable for any loss on account of any such investment.

"5. That said Charles Walter Costello Jr. shall withdraw from said fund for living expenses only such amounts as said Charles Walter Costello Sr. shall approve and allow.

"6. That should said Charles Walter Costello Jr. die before arriving at the age of 21 all of said fund shall wholly belong to and be the sole property of said Charles Walter Costello Sr.

"7. That should said Charles Walter Costello Sr. die before said Charles Walter Costello Jr. reaches the age of 21 all of said fund shall belong to and be the sole property of said Charles Walter Costello Jr.

"8. That upon said Charles Walter Costello Jr. attaining the age of 21 before the death of said Costello Sr., he shall be entitled to one fourth of said fund, half cash (if he then has so much in cash) and half in securities; said Costello Sr., to determine, if and upon his attaining the age of 25 before the death of said Costello Sr., he shall be entitled to another fourth, half cash if there be so much cash and half in securities; said Costello Sr. to determine, if and upon his attaining the age of 30, he shall be paid all the remainder of said fund, unless said Costello Sr., decides for any reason that Costello Jr. should not then receive same and in such event this agreement shall continue for such time as said Costello Sr. shall determine, however, if said Costello Jr. should die after becoming 21 and before attaining the age of 25 or if after attaining the age of 25, he should die before reaching the age of 30, then in either event the remainder of said fund then on hand shall become the sole property of Costello Sr.

"9. That there shall never be any liability on the part of said Costello Sr. to Costello Jr. or any other person for any loss in any event on account of investments or other handling of said fund or any part thereof.

"Executed in duplicate the day and year hereinbefore expressed.

> "C. W. Costello Sr.
> C. W. Costello Jr."

"State of Tennessee
County of Shelby

"Personally appeared before me, Charles Walter Costello Sr. and Charles Walter Costello Jr. who each separately acknowledged that they signed the within and foregoing agreement for the purposes therein contained.

"_____

> Notary Public

"(Endorsed "Filed April 29, 1953, John W. McGoldrick, Clerk")"

After the execution of said contract Costello, Sr., became involved in several unprofitable ventures and died in 1953 with only the estate above mentioned. There is nothing in the record to indicate the amount of property which Costello, Sr., had in his own right in June 1938, but the inference is that at that time he was in good financial condition over and above the $18,661 mentioned in the agreement.

Costello, Jr., filed his claim against the estate in the total amount of $18,661 alleging that said funds were a trust fund and seeking recovery of the full amount of the $18,661, plus interest, from September 1939. The affidavit of Costello, Jr., is to the effect that no part of said claim had been paid, and the written agreement of date June 9, 1938, was made a part of Costello, Jr.'s statement of claim.

The executrix filed a timely exception to the claim and gave as her reasons therefor the following:

(1) That for the period 1938 through 1949 Costello,

Sr., expended for and gave to Costello, Jr., considerably more money than the sum claimed by Costello, Jr.

(2) That by the terms of the mutual agreement Costello, Sr., had right to make any type of investment which he saw fit with said money.

(3) That paragraph 9 of the agreement was as follows:

"That there shall never be any liability on the part of Costello Sr. to Costello Jr., or any other person for any loss in any event on account of investments or handling of said funds or any part thereof."

(4) That from 1943 to 1948 Costello, Sr., lost $16,106.25 in Arco Transport Co., and that in 1945 Costello, Sr., lost $2,909.92 in a Vim-O-Lube venture.

Upon the hearing Costello, Jr., testified that he cashed checks out of the money on deposit in the bank for living expenses at school amounting to approximately $3,000, and that he did not get any funds after August 1939; that he signed two or more checks in blank for his father's countersignature, and he does not know what his father did with the money except that he spent approximately $3,000 in improving some property owned by the executrix, claimant's stepmother. Claimant also testified that as to the bonds which were transferred from Marx & Bensdorf to a lock box in the Manhattan Branch bank, he did not remember getting any of them and did not know what became of them.

There is no evidence in the record as to a description of the bonds, only a reference contained in the written agreement, to wit: $9,826 face value.

Mrs. R. L. Alexander of the Safety Deposit Department of the Manhattan Branch of Union Planters National Bank & Trust Co., testified as witness for claimant

that the bank's records showed that the lock box was listed in the name of C. W. Costello, Jr., with right of C. W. Costello, Sr., to enter, and that their record showed that C. W. Costello, Jr., entered the box on June 15, 1938, and on July 1, 1938, and that C. W. Costello, Sr., entered the box on October 17, 1938, and nothing else happened concerning the box and it was closed after October 17, 1938.

The claimant rested his proof after the testimony of claimant and Mrs. Alexander, and the defendant, executrix, moved the Court for a directed verdict, which was granted by the Court on the grounds that the claimant had not made out his case against the defendant, executrix, and, accordingly, claimant's claim was dismissed.

Appellant has filed Assignments of Error as follows:

"I

"The Court erred in ruling that the burden of proof was on the claimant, and not on the defendant. This was error, because:

"(1) There was no plea of non est factum, and the conclusive terms of the instrument show that decedent was an express trustee, of certain specified funds and securities, and was liable to account to claimant, when he became 30 years of age.

"(2) The two defenses embodied in the exceptions to the claim, inconsistent though they be, are both affirmative, the first asserting that all the funds had been paid over to claimant, and the second asserting that all the funds had been lost in investments.

"II

"The Court erred in directing a verdict for defendant. This was error, because:

"(1) Such was an inapt motion, and inapt action by the Court.

"(2) Treating it as a demurrer to the evidence, it was against all the evidence in the cause.

"III

"The Court erred in dismissing the complaint, and in not sustaining same for a recovery of the amount stated therein, diminished only by the payments shown by claimant."

The written contract was an integral part of the claim and on its face by Section IX, Costello, Sr., was relieved by contract from liability to Costello, Jr., or anyone else for any loss on account of investments or other handling of said fund or any part thereof.

■ Claimant insists that the filing of the written contract makes out a prima facie case of liability against the estate of Costello, Sr., for the amounts stated in said written contract to wit: Bank account of $8,836.20, and mortgage in the par sum of $9,826. He further insists that since the executrix does not deny the execution of the written contract by a special plea of non est factum, that the burden of proof was upon the defendant, executrix, to prove nonliability. With this contention we must respectfully disagree. The contract upon its face shows expressly that the bank account and all future additions thereto were to be kept in the name of the claimant, Costello, Jr., and that the mortgage bonds or securities were to be kept in a safety deposit box in the name of both Sr. and Jr. The instrument shows upon its face that the only authority Costello, Sr., had over the bank account was to countersign checks drawn by claimant. The claimant's title, access to and right to possession of both the bank account and the securities were equal to or

superior to that of Costello, Sr. In addition, there is the nonliability clause in favor of Costello, Sr., in Section 9 of the agreement. From all of this we are of the opinion that the written contract, though undenied by plea of non est factum, does not establish in and of itself a prima facie case of liability.

■ Of course, formal pleadings in connection with claims of creditors against decedent estates were dispensed with under Section 8196.2 et seq. of the Code. Poole v. First Nat. Bank of Smyrna, 29 Tenn. App. 327, 196 S.W. (2d) 563, 567, and Cooper's Estate v. Keathley, 27 Tenn. App. 7, 177 S. W. (2d) 356, 359.

. However, in order to obtain judgment against the estate, it was necessary for the claimant, Costello, Jr., to prove by satisfactory evidence that the deceased Costello, Sr., received or handled some portion of said funds or securities in such a manner as to render him liable in the face of Section 9 of the agreement. Substantially, all that the claimant proved was as follows:

That claimant carried checks back to college with him countersigned in blank by his father, which he cashed for living and school expenses; that his best estimate of the total amount expended by him of the bank account would not exceed $3,000; that he signed two or more of the checks in blank for his father to fill out and at least one of which was filled in for $3,000 to enable his father to pay for building materials used in improvements to real estate owned by the executrix; that the securities were put in a new lock box at Manhattan Branch Bank in Jr.'s name with right of either to enter, and that claimant entered twice and Costello, Sr., once, on October 17, 1938, after which the box was closed out; that since Jr. did not get the securities, the father must have.

No attempt was made to identify the securities in the lock box or to trace the proceeds from same or any part of same. It would appear that some evidence along this line was available to claimant because the agreement shows that originally the paying agent would not pay the interest and maturities on same to Costello, Sr., because securities were in Jr.'s name, hence the guardianship in the first place.

No evidence was presented concerning the bank account. It is not even shown by the record that the account has been depleted or closed out except by inference which was to the effect that it was closed sometime in 1938 or 1939. Jr. testified that the cancelled checks had never been in his possession and that he presumed his father got them. Even so, the bank's Ledger Sheet, a permanent record, would have shed some light on the transactions. It would have shown if and when the bank account became depleted and might have shown whether there had been any additional deposits representing interest, maturities, or sale of the securities mentioned in the instrument.

We think the evidence submitted by Costello, Jr., is so vague, so general and so speculative as to be totally insufficient upon which to predicate a judgment against the estate of Costello, Sr. We think the Probate Court properly denied or disallowed said claim.

Further, it appears that the claimant's own testimony shows him guilty of laches. If his father breached the written agreement, whether trust agreement or not, it was breached not later than 1940 when the securities had been taken out of the lock box, the bank account had been depleted, and claimant asked his father for money and was refused. From 1940 on up until his father's death

in 1953, claimant never asked for any accounting of his $18,000 and never brought any action therefor or made any investigation concerning the same. He showed no reasonable explanation for his long delay in making claim against his father for any of the money. We think the Probate Court would have been justified in dismissing the claim on such grounds. Gibson's Suits in Chancery, Fourth Edition, Sec. 70.

Therefore, we hold that the Probate Court correctly held that the burden of proof was upon the claimant and that the claimant had failed to carry the burden of proof of his claim and, hence, all of the Assignments of Error must be overruled.

Decree will be entered in this Court affirming the decree of the Probate Court. The claimant, Costello, Jr., and the surety on his appeal bond are taxed with the costs of this appeal.

Swepston, P. J., and Avery, J., concur.