# In re ESTATE of W. M. RUSSELL.—373 S. W. (2d) 226.

Eastern Section, at Knoxville. May 22, 1961.

Certiorari Denied by Supreme Court October 20, 1961.

Donaldson, Montgomery & Kennerly, Knoxville, for plaintiff in error.

Boyce Griffith, LaFollette, Kramer, Dye, McNabb & Greenwood, Knoxville, for defendant in error.

AVERY, (P.J., W.S.). This case was heard by the Judges of the Western Section of the Court of Appeals of Tennessee sitting at Knoxville, Tennessee, in the Eastern Section on the 16th day of March, 1961. This suit involves a claim of Malinda Russell Owens filed against the estate of W. M. Russell, deceased, and the claim is in the following words and figures:

"IN THE COUNTY COURT OF CLAIBORNE COUNTY, TENNESSEE

"IN THE MATTER OF:
THE ESTATE OF W. M. RUSSELL, DECEASED
MALINDA RUSSELL OWENS, CLAIMANT.

"Balance due for rent collected and held by W. M. Russell on brick building in Middlesboro, Kentucky, known as Manhattan Bar Grill, the property of claimant. Said rents were paid to said Russell and retained by him in the total amount of Eighty-Four Hundred Dollars ($8400.00). The items are as follows:

| Year | Rent Collected | | Amount |
|------|------|------|------|
| 1951 | " | " | $1,000.00 |
| 1952 | " | " | 1,925.00 |
| 1953 | " | " | 3,200.00 |
| 1954 | " | " | 2,100.00 |
| 1955 | " | " | 175.00 |
| | | | $8,400.00 |

/s/ Malinda Russell Owens"

The claim was properly sworn to. The claim was filed on May 14, 1955, with the Clerk of said Court. On June 13, 1955, exceptions to the claim were filed, as follows:

"Now comes Charlie H. Russell, Executor of the estate of W. M. Russell, deceased, and excepts to the claim filed against said estate by Malinda Russell Owens in the amount of $8,400.00 and says that the same is not a valid claim against the said estate, that said estate does not owe the said claimant anything and that any money the said W. M. Russell may ever have owed the said claimant has been fully paid.

"Wherefore, the said executor prays that a day certain be set for a hearing on the issues joined and that he be hence dismissed with his reasonable costs.

/s/ Boyce Griffith
Attorney for the Executor
/s/ R. R. Kramer
Attorney for the Executor.".

Sometime during the month of July 1957, the case was heard in the County Court on oral testimony, at which time the Court requested counsel for each party to file memorandum briefs supporting their respective contentions, and on April 2, 1958, the case was decided by the Honorable James D. Estep, Jr., County Judge of Claiborne County, and by his judgment the claim was denied, but apparently no decree was entered at that date, such denial appearing in what the Court called a "Memorandum of Opinion." Thereafter and on August 15, 1960, there appears in the record a "Finding of Facts" by said Judge of the County Court, and the actual judgment appears to have been filed and entered on August 15, 1960, wherein the claim was denied and the suit was dismissed at the cost of claimant, and from which judgment or decree of the Judge of the County Court exceptions were saved, an appeal prayed, granted, and perfected to the Court of Appeals of Tennessee.

The record shows that the bill of exceptions was filed in the Court of Appeals of Tennessee, Eastern Section, on August 16, 1960.

The claim grows out of rent paid by one Marcee to W. M. Russell, deceased, an uncle of the claimant, Malinda Russell Owens, who was deceased's niece, for a building

known as Manhattan Bar and Grill located in Middlesboro, Kentucky, owned by claimant and to which deed to her was executed on November 5, 1943, by a Special Commissioner in the Bell Circuit Court, wherein said property was sold to the highest bidder, was purchased by John Chesney, who later assigned his purchase agreement to complainant, Mrs. Malinda Russell, who is now the claimant, Mrs. Malinda Russell Owens. The original deed executed by the Special Commissioner, which was approved and signed by Judge J. S. Forester, of Bell Circuit Court of Kentucky, in Bell County is Exhibit "I" of claimant.

In this Opinion Mrs. Malinda Russell Owens will hereafter be referred to as claimant, the status she had in the Court below, though she is the appellant in this Court.

Charlie Russell, also referred to in the record as Charles H. Russell, "Executor of the estate of W. M. Russell, deceased," will be referred to hereinafter as defendant, though he is appellee in this Court. Charles Russell is referred to at some places in this transcript by the designation "administrator-defendant". He is referred to in other places as "executor" of the estate of W. M. Russell, deceased, however, the record does not definitely disclose whether W. M. Russell died testate or intestate.

The record discloses that deceased was never married and that the claimant, Malinda Russell Owens, Charles H. Russell, the administrator or executor, and one Clarence Russell, deceased's nephews and niece, appear to be his only heirs at law or devisees or legatees of a will, if he died testate.

The Judge of the County Court of said Claiborne County found specifically that the title to the Manhattan Bar and Grill was vested in the claimant by the deed hereinbefore referred to, and that is a fact shown by this record in which this Court concurs.

The Court below further found that this property was occupied under lease by one Bill Marsee or referred to in some places in the record as W. B. Marsee, during the years 1951 to 1955, and that during that period of time he paid to deceased, "W. M. Russell $8400.00 in rents by reason of his occupancy of said Middlesboro property", and with that finding this Court agrees. The Court below did not find that said amount was all that he owed for the rent of the property during said period of time. The copy of the lease is filed as Exhibit "2".

The Court further found:

"* * * it was brought out by defendant's counsel under his cross examination of claimant and in direct response to his questions that she had asked said Russell for the repayment of said sum to claimant, and that the said Russell told her that he would fix it so she could get it and that he would not keep her money."

That is a part of the Court's finding No "3." This finding of the Court will be further referred to hereinafter.

The Court further found in his findings No. "4", not only that the title to said property had been in the claimant, Malinda Russell Owens since November 5, 1943, but further found that the city, state and county taxes on said property during said term of years involved, had been paid by Malinda Russell Owens, the claimant, and

that she had continued to pay the taxes up until the time of the trial in this case.

In the findings of the Court, "Item 5", he said:

"But the court finds that the said Russell made advancements to the said Malinda Russell Owens far in excess of the $8400.00 sued for herein. Claimant admits by her own testimony that her son C. W. Russell had received the sum of $6,748.20 for the period November 1, 1946 to December 31, 1951. She also testified she bought the Cumberland Gap Hotel from W. M. Russell for the sum of $15,000.00 of which $5000.00 was a gift from said Russell. The purchase of the hotel was 'sometime in the thirties', the exact year not appearing (Tr. 13). Claimant later conveyed this hotel to her brother Clarence Russell in 1946. (Tr. 20-21)."

There is only one Assignment of Error by the appellant in this case, which is a follows:

"The learned County Court erred in refusing to allow Malinda Russell Owens a recovery of the $8400.00 with interest thereon from the date of the filing of her claim herein on May 14, 1955 because in view of the facts above recited the plaintiff Malinda Russell Owens was the owner of the property at the time the said W. M. Russell made this demand on her tenant and collected the rents and kept them after his promise to repay Malinda Owens for his mistreatment of her.

"The County Court also erred in taxing Malinda Russell Owens with the costs of the cause."

Counsel for the appellee or defendant below, in their reply brief, have a paragraph therein in which they have

styled "appellee's assignment of error", which is as follows:

"The appellee assigns as error the action of the County Judge in admitting testimony of Malinda Russell Owens concerning conversations with the decedent, after seasonable objection, and in finding that the decedent had promised to pay to Mrs. Owens the amount for which claim was made, or any part thereof.

"This assignment of the appellee will be discussed in connection with the argument presented in support of the contention of the appellee set forth hereinafter as contention number (1)."

Of course, the Assignments of Error by appellant and this particularly designated Appellee's Assignment of Error constitutes the issues to be determined by this Court, however, the defendant below has set out five specific reasons why counsel says that the judgment of the lower Court should be affirmed, and briefly they are as follows:

1—Claimant failed to carry the burden of proving their claim.

2—Guilty of laches barring her claim.

3—That any claim she had was more than adjusted before decedent's death.

4—Any claim she had had been off-set by services of management and repairs paid for by deceased.

5—That there is material evidence in the record to support the action of the County Judge in favor of the estate.

This record reveals the fact that the deceased and his two nephews, one of which is the administrator or executor, and his niece, the claimant, acted in such way in the transaction of each other's business that apparently whatever one did was agreeable to the other, and with some thought of final adjustment in some manner satisfactory to all. In other words, their dealings with each other were as might be expected of relatives living under conditions that are shown by this record. Deceased lived with the claimant part of the time, he lived with each nephew a part of the time, and it is clear that the business between them was not conducted upon an "arms length" basis such as might be done between strangers.

The income tax returns of deceased for 1951, 1952 and 1953 were examined in the trial of this cause, and at the time it was agreed that photostats of these federal income tax returns would be filed as exhibits.

Also the state, county and city tax receipts, together with checks showing payments of taxes on the involved property in Middlesboro, Kentucky, were examined in open Court, and these tax receipts and checks show that the claimant had paid the state, county, and city taxes on this property during the term of the lease involved in the claim, and the rent paid thereunder. These receipts were issued to claimant, the checks were signed by her, drawn on her account at the bank and show that they were paid through bank endorsements.

None of these income tax returns of decedent and none of the state, county or city property tax receipts or checks by which the same were paid by the claimant, appear to have ever been filed, either duplicates, photostats or originals.

There are two stipulations of counsel with respect to these federal income tax returns of deceased, and with respect to the tax receipts and cancelled checks for the property tax as paid by claimant, need not be filed. These stipulations show that these tax receipts and checks by the claimant are for the state, county and city taxes on the property involved for the years 1951, 1952 and 1953, and that the federal income tax returns of the deceased were for the same years.

In these federal income tax returns the deceased reported that he collected the rents; that he paid the taxes, state, county and city; that he made certain repairs, and by these returns, the deceased showed therein that he purchased the property in 1946. But the federal tax returns show that deceased never took any depreciation on the building except for one year, and then only $360.00, or thereabout, and though the record in this case indicates that deceased was generally wealthy, according to the proof revealed in the record, he paid no income taxes, one of his nephews notified after deceased took deductions and exemptions, he owed no income tax.

There is one other matter shown by the stipulations signed by all counsel for the respective parties, and that is to the effect that Malinda Russell Owens, the claimant, had kept a book record of amounts given her by her uncle, William Russell, the deceased, and about which she was examined and agreed to file. As to this stipulation respecting this book, it is in the following words and figures:

"The 'book record' maintained by Malinda Russell Owens showing amounts given to Malinda Russell Owens by her uncle, William Russell, deceased, show receipts by Malinda Russell Owens from William

Russell of amounts totaling more than three times the amount claimed in this proceeding and, therefore, said 'book record' need not be filed.''

While that stipulation is signed by counsel for all parties, there is nothing in this record showing when such gifts were made, that is, whether they were made during the years for which the claim is filed or prior thereto. There is evidence in this record that C. W. Russell, a son of the claimant, between November 1, 1946, and December 31, 1951, has received $6,748.20 from his uncle, and that between December 31, 1951 and January 1955, he received only $30.00.

There is also evidence in the record that the claimant received no monies from her uncle between November 1, 1946 and December 31, 1951, and that from December 31, 1951 to January of 1955, she only received $300.00. This is her testimony. It is not shown whether any of these items as given to the son of claimant by deceased or to the claimant constituted any part of the rents claimed as set forth in the account filed therefor. It is abundantly clear in this record that the title to the property involved, known as the Manhattan Bar and Grill located in Middlesboro, Kentucky, was in the claimant. The lease executed to the tenant Marsee for that building was executed by the claimant and the lessee, is dated July 1, 1948, it is for an initial period of five years with the whole amount of the five years rent stated to be $13,500 payable in monthly installments of $225.00 to the lessor. It contains an option for an additional five years by the following statement:

''Upon the termination of this lease by expiration of time, the lessees shall (have) the right and privilege

of extending the term of the lease for another five (5) years under the same terms and conditions.''

It is signed ''Melinda Russell by W. M. Russell, Agent'', and it is also signed ''Wm. B. Marsee and Gaines Williamson'' as lessees. It is acknowledged before a notary public by the lessees and for the lessor; the acknowledgement shows that it was acknowledged ''By William Russell, Agent for Melinda Russell, and was by him acknowledged to be the free act and deed of Melinda Russell, for the purposes stated in the instrument''. Certified copy of same is filed as Exhibit ''2'' of claimant and shows that it was properly filed for record and recorded on the 6th day of July, 1948.

It seems from the evidence of claimant that she considered the monies paid to her son as a part of these rents which matured prior to 1951. It is her contention that there was an acknowledgment on the part of deceased that he did collect her rents, and that she agreed with him to accept in settlement the rents for 1951, 1952, 1953, 1954 and until his death in 1955, and that he promised that he would make good those rents during those years.

There is introduced into the record a note for $3000.00 executed by Marsee to deceased, which Marsee testifies was for back rent and a part of the future rents for the year 1951.

On this note approximately $2,000 was for rent in arrears or due at the time the note was made. So it would appear that claimant has made up her account from the information furnished her by the tenant of the amount of rents paid to deceased and owing for the years '51, '52, '53, '54 and '55, but only in the amounts that the tenant claims he paid for those years. If the tenant is to be

believed, he did make the payments to deceased as shown by the accounts filed for those respective years totaling $8,400. Marsee testifies to that fact. Deceased passed away in January 1955. The proof indicates that in 1952 Marsee only paid $1,925 of a total of $2,700 that would have been due for that year, but in 1953 he paid $3,200, which, if he did so, evidently included some of the arrears rent for 1952. Apparently he only paid $2,100 during 1954, or if he paid the whole $2,700, then claimant gave credit for the $600.00 repair bill shown to have been paid by deceased on the building in Cumberland Gap known as the Lee Building, and repair on the roof of the Manhattan Bar and Grill as shown by Exhibit ''7'' on the account of F. O. Ealy Company, contractor, who did the repairs to the building.

This record clearly reveals the fact that the claimant testified to transactions and conversations with the deceased, which in her direct examination were excepted to and the exceptions sustained by the Court, but on cross-examination counsel for claimant contends that counsel for defendent or estate introduced, by the claimant, conversations and transactions between herself and the deceased, opening the way for her testimony on redirect examination, which made the cross-examination and redirect examination competent under the ''Dead Man's Statute''.

There is quite a controversy in this record between counsel for claimant and the administrator, many objections and exceptions to questions asked and testimony offered and many places in the record counsel for the estate said that he was asking those questions only for the benefit of the record and not as substantive proof, but during the cross-examination of complainant when it

was not clear just exactly why such questions were being asked in the light of the provisions of the Dead Man's Statute, the following took place between counsel:

"MR. MONTGOMERY: I am not objecting to this, you are on your own now.

"MR. KRAMER: Alright."

Thereupon, counsel on cross examination asked the claimant the following question:

"Q—Did you ask Uncle Bill for that money when it was paid, when you heard it was paid?

"A—Yes, he told me that I should get it.

"Q—Why didn't you sue him for it? Why did you wait until after death sealed his lips?

"A—Because he promised me that he would fix it so I could get it, that he would not keep my money."

Again the claimant was asked by Mr. Kramer:

"Q—Don't you honestly believe, Mrs. Russell, that considering the amount of money, the amount of stock, and the amount of property that W. M. Russell gave to you directly and indirectly, and enabled you to get, that in fairness and honesty his estate doesn't owe you one dollar?

"A—His estate does owe me, because he collected my rents and at his death he still had them."

On redirect examination the following statement was made by Mr. Montgomery:

"MR. MONTGOMERY: In view of the questions that Mr. Kramer has asked you, state whether or not

your Uncle Bill Owens recognized this debt for these rents that he had collected and promised to pay it back to you?"

Clearly the "Uncle Bill Owens" refers to "Uncle Bill Russell". However, that direct question was not answered in view of the fact that objection was made by Mr. Kramer that it called for a conclusion, and during their discussion on the competency of that evidence Mr. Montgomery asked the following question:

"Q—State whether or not your Uncle Bill told you that he collected rents on this Manhattan Bar and Grill Building and that he was going to pay them all back to you?

"A—Yes, sir, he did."

On recross examination claimant was asked if she had ever made a demand upon the administrator for the payment of this debt prior to the time she filed this claim and she testified that she had. Thereafter, Mr. Kramer made the following statement:

"MR. KRAMER: Your Honor, we want to object to all of the testimony this witness has given with reference to any conversations between her and Mr. W. M. Russell with reference to the establishment of this claim. Under the statute, I don't think she is competent to testify. We can submit authorities on it later."

Then followed an argument between counsel with respect to the fact that when these statements were brought out by opposing counsel it made such conversations competent. Argument was had before the Court on the com-

petency of these questioned conversations and transactions, and thereupon said the Court:

"THE COURT: Overrule the objection. I don't believe Mr. Montgomery put anything in either."

It is insisted by counsel for estate that the answers of claimant are not responsive to the questions asked and therefore can not be considered to open up the law relating to the testimony against an executor or an administrator by a party to the suit of conversations or transactions with deceased.

It is very true that some of the testimony of the claimant, on cross examination was expressly for the record, in view of the fact that claimant's counsel had objected to the competency to the questions asked because of the Dead Man's Statute, but thereafter, and before questions were asked as set out on page 232, counsel for the estate was given warning that he would be on his own and no exceptions or objections were offered to these questions, and we think that this was an introduction of evidence by an opposite party in such a proceeding which permitted, in answer to such questions, the proper consideration of the answers given therefore made the question later asked by counsel for claimant, as shown by the question and answer appearing on page 232 of this Opinion, competent.

Furthermore the direct examination of the claimant is found on first 11 pages of the bill of exceptions and we see nothing in that examination which indicates an effort on the part of claimant which would justify a great deal of the cross-examination of the claimant with respect to transactions and conversations with the deceased, even for the record, and certainly where counsel for estate

asked questions that would call for testimony involving conversations or transactions with the deceased by the claimant and those questions were objected to by counsel for claimant, and thereafter introduced "for the record" by the cross-examination, to that extent this Court could not consider such testimony. But when counsel for claimant refused to further except to such cross-examination and notified counsel for the estate to that effect, as hereinbefore shown, the evidence brought out as shown in this Opinion on cross-examination must be considered competent.

In Bowlen v. Baker, 147 Tenn. 36, 245 S. W. 416, while the Supreme Court held the testimony in that case not competent, the Court said:

"The complainant relies on a line of cases holding that when any transaction with a deceased person is partially gone into by the opposite party cross-examining this permits the party testifying to tell the whole of that transaction on reexamination." This seems entirely sound. "An executor or administrator may call the opposite party to testify as well by cross-examination as directly, and such opposite party should be allowed under such circumstances to explain the whole matter about which he was called to testify. See 40 Cyc. 2343, and cases cited."

The Court then said in Bowlen v. Baker, supra, "We have a different case before us, however."

In the instant case it is not insisted that the evidence given by the claimant "for the record" on cross-examination is competent, but only that part of cross-examination which was gone into after objection by counsel for claimant was withdrawn and notice given counsel for estate as

hereinbefore set out. So on recross-examination we have shown the one question asked by counsel for claimant and the answer thereto, which we think resulted properly from cross-examination of claimant after notice aforesaid by opposing counsel, and made this re-direct question and answer thereto competent.

This record is replete with competent evidence to the effect that the two nephews and the niece, were each and all given money by the deceased and to the effect that he did not give one of them any more money than he did the other.

It is also insisted by counsel for the estate that the evidence "of Mrs. Owens is so vague, so general and so speculative as to be totally insufficient upon which to predicate a judgment against the estate of W. M. Russell", and they strongly rely upon the case In re Costello's Estate, 37 Tenn. App. 649, 269 S. W. (2d) 602 (1954).

It is also insisted that the claimant is guilty of laches and counsel for estate relies upon In re Costello, supra, for that contention.

In the light of the facts of this case we can not agree that In re Costello governs the question of laches or that it is any support for the statement that claimant's evidence is so disconnected et cetera, that it could not support a judgment in her favor. In the Costello case there was a written contract between father and son. That contract and its meaning,—that is, its legal construction was before the Court, its execution followed the removal of the disability of the minority of Costello, Jr., released his father, Costello, Sr., and the sureties on his guardian bond and immediately thereafer or

on the same day a contract was executed between the two which specifically provided for the handling of money and property equivalent to the amount formerly held by the guardian, and in that contract was the provision for the disposition of that fund. The contract provided that if Costello Jr. died before he arrived at the age of 21, all of the fund was to belong to Costello Sr., and in event Costello Sr. died before Costello Jr. reached the age of 21, all of the fund was to belong to Costello Jr. The contract provided for Costello Sr. to handle that fund.

"That there shall never be any liability on the part of Costello Sr. to Costello Jr., or any other person for any loss in any event on account of investments or handling of said fund or any part thereof." ·

In that case we said the contract was an integral part of the claim and referred to the above quoted statement in the contract. We did say that the bank account appeared to have been closed out in 1938 and that if the contract had been breached it was done not later than 1940, and no claim was made about it until 1953, which justified our statement that the defense of laches should be invoked.

The case was dismissed because of the failure of the claimant to prove the claim by a preponderance of the proof, all elements necessary to show a preponderance of proof being considered, which included the terms of the contract and expiration of such long time.

In the instant case the lease contract was executed by the claimant, through her agent, the deceased. It is specific that deceased was her agent, and the contract for the lease having been executed as her agent, is a

strong circumstance in favor of contention of claimant that deceased was collecting the rents under that rental contract as the agent of the claimant. So when such circumstance exist as is shown by the proof of the lessee of the building that he did make the payments under the lease to deceased, such would require some proof to destroy that agency which could properly be inferred, so it would seem to us that when this agency is established by the written lease, it is a strong circumstance to support the testimony of the claimant, which the record reveals to be competent, even if none of her statements with respect to the transactions and conversations with deceased on cross-examination could not be considered.

It is the contention of the counsel for the claimant that the exceptions to the claim not having specifically set up the defenses relied upon, such as advancements and gifts claimed by the estate as set-offs against the claim for the rent, that the testimony offered with respect thereto should not be considered by this Court.

On that point we agree with counsel for the estate, that exceptions are informal and that every defense to such claim did not have to be specifically set out therein. We think the case In re Costello's estate is authority for supporting contention of counsel for estate relating to the sufficiency of the pleading.

We said in the Costello case, p. 658 of 37 Tenn. App., Item 2, p. 606 of 269 S. W. (2d):

"Of course, formal pleadings in connection with claims of creditors against decedent estates were dispensed with under Section 8196.2 et seq. of the Code. Poole v. First Nat. Bank of Smyrna, 29 Tenn.

App. 327, 196 S. W. (2d) 563, 567, and Cooper's Estate v. Keathley, 27 Tenn. App. 7, 177 S. W. (2d) 356, 359.''

■ The third statement by counsel for the estate where he contends that the claim, if any, had been adjusted before decedent's death could mean no more than by some agreement the debt had been paid. Payment is an affirmative defense as well as the defense set forth in his contention.

■ His contention that the claim had been satisfied by services of management and repairs, is likewise an affirmative defense and we are unable to find sufficient proof to justify such conclusions by this Court in support of these contentions.

Counsel for both parties have quoted from Byrd v. Wright, 180 Tenn. 627, at page 634, 177 S. W. (2d) 820, 823, where the Supreme Court said:

"* * * when a cause is tried before the Chancellor, without a jury, and on oral testimony, the Chancellor's findings of fact are 'almost conclusive' and to uphold his decree, this court will determine only that it is supported by material evidence.''

Counsel for both parties insist that the findings of fact by the County Judge, in the instant case, to be considered in the light of the above quotation, and both insist that except as to the County Judge's conclusion, he finds the facts which would support each contention of respective counsel. As we understand the opinion of the County Judge, he held that:

1—The property belonged to claimant.

2—The lease was executed for the claimant by her agent, W. M. Russell.

3—The tenant paid her agent $8400.00 in rents by reason of the occupancy of the involved property for the time shown by the claim filed and the proof.

4—"It was brought out by defendant's counsel under cross-examination of claimant in direct response to his questions" that she had demanded payment from the deceased and that rent he collected during the involved years was shown by the claim filed and that deceased had agreed that he would not keep her money, but would, in the words of the Court, "fix it so she could get it".

5—He found that the state, county and city taxes on said property had been paid by the claimant during the years involved.

In other words, it appears that the Court found, after hearing and seeing the witnesses testify that the claim was just and that the deceased did owe the amount shown by the claim at one time, and said: "but the Court finds that the said Russell made advancements to the said Malinda Russell Owens far in excess of the $8400.00 sued for herein", and therefore disallowed the claim. The finding of the Court shows that he arrived at that conclusion because he considered the $6,748.20 which the son of claimant had received from her uncle, as an advancement to her, and that $5,000 of the consideration in connection with the purchase of the Cumberland Gap Hotel was a gift by deceased, but he referred to the fact that the purchase of that hotel was back "sometime in the thirties", and said that the hotel was conveyed to her brother Clarence Russell in 1946. We are unable

to see any justification on the part of the Court, from the proof in this record, to warrant such finding. From this record it would be pure speculation, as we understand this proof, oral, documentary and circumstantial, to hold that such sums as the Court found to be advancements, settled the debt shown by the claim.

■ We conclude that the evidence preponderates against the finding of the County Judge to the effect that so-called advancements settled the debt in question. Therefore, we are constrained to sustain the Assignment of Error by claimant and render judgment here for the amount of the claim.

■ Now it is insisted by counsel for claimant that interest should be allowed on that claim back to January of 1955. We do not agree with that conclusion, the relationship of the parties and their dealings with each other seem to us to justify our position that no interest should be allowed, and acting on our discretionary authority, interest is not allowed.

The costs of the cause will be paid by the administrator of deceased's estate out of the funds in his hands as such, and he may take credit therefor in his final settlement.

The cause will be remanded to the County Court of Claiborne County for the completion of the administration of said estate by the administrator in accord with this Opinion and the decree entered by this Court.

Carney and Bejach, JJ., concur.